## Conrad's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*S. Lloyd Moore,* of *Moore, Gossling & Panfil,* for exceptants.

*William H. Lathrop* and *Walter Penn Shipley,* contra.

SINKLER, J., June 6, 1938.—The auditing judge has correctly construed the concluding paragraph of the will. The phraseology does not effect a conversion, nor does it impose a duty to sell upon the executor and trustee. A power of sale for the specified purposes is conferred upon him.

Refusal to surcharge the accountant for failure to sell certain real estate is the result of the conclusion reached by the auditing judge upon a mixed question of law and fact. The finding in such a case will not be set aside save in case of manifest error: Nola's Estate, 31 D. & C. 112. The record in the present case does not disclose manifest error.

The auditing judge has found as a fact that the real estate was not salable during the period of time the trustee had title to it. This finding is well supported by the evidence.

Mr. Massey, called by the accountant, has been engaged in the real estate business for 50 years. His office is three blocks distant from the property under consideration. He has appeared frequently as an expert witness in this court and other courts of this county; indeed, probably more frequently than any other living individual. His testimony is clear and unequivocal: "I don't think this property has been salable in the last 30 years." The only possible purchaser, he continues, is the tenant. According to the testimony of the trustee's agent, the tenants from time to time were either unwilling or unable to purchase the premises.

The witness Keck has been in the real estate business for 22 years. When asked whether he thought the property in question has been salable since 1918, he replied: "Really I do not." The reason for the economic obsolescence (as he describes it) in the locality where the property in question is situate "is the fact that the housing committee from your Philadelphia Housing Association and the present municipal authorities have definitely pointed to this area as a slum area".

Both these witnesses were examined at considerable length and cross-examined. While their evidence is largely as to matters of opinion, careful reading of the notes of testimony convinces us that their opinions are well-founded. Had the auditing judge found that the failure of the trustee to sell the property was due to his want of care, he would have disregarded the opinion of the witnesses in question to the effect that the property was unsalable and that the trustee's agent had done everything that could be done to effect a sale.

Were the power of sale construed as a conversion, nevertheless the auditing judge is correct in his refusal to surcharge the trustee for failure to convert. A trustee should not be surcharged because he has failed to accomplish the impossible, even though directed to do so by his testator.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LADNER, J., concurring—I concur in the result but not in the construction of the will.

In this case testatrix by her will (a) directed her executor to pay debts and funeral expenses; (b) gave six pecuniary legacies of substantial amounts to the named legatees; (c) bequeathed $4,000 to her executor in trust for a grandchild until 30 years of age, then absolutely; (d) finally gave the residue "real personal or mixed to the executor to invest and keep the same invested in good, safe and marketable securities . . . to pay the net issues, income and profits" to her son, etc., under a spendthrift trust clause and to pay the corpus upon his death to his children, or, in default of issue, to testatrix's daughter.

The executor was designated to serve in two capacities, as executor and as trustee. Obviously, as executor it was his duty to convert into cash so much of the estate, personal and real, as was necessary to comply with (a), (b), and (c). When this was done his duty as an executor ended and the residue of the estate, including real estate

unsold, came to him in his capacity as trustee. No power was given to him to retain the residue in the form that it came to him. On the contrary, he was directed *to invest and keep it invested in good, safe, and marketable securities.* This surely was tantamount to an express direction to sell the real estate which as executor he had not sold, for in no other way could he comply with the direction to invest the whole residue, real, personal, and mixed, in good, safe, and marketable securities: Garrettson's Estate, 23 Dist. R. 346; Plate's Estate, 30 Dist. R. 902; Donovan's Estate, 28 D. & C. 93. So considered, there is nothing inconsistent with the language vesting in him also the power of sale which reads:

"And I authorize, direct and empower him either as executor or as trustee hereunder or in both capacities, to sell and dispose of any or all of my real estate for the purpose of paying my debts for the purpose of distribution and settlement of my estate or the payment of legacies *or for any other purpose* either at public or private sale", etc.

Nor can the words "any or all of my real estate" be construed in this case to impart mere discretion, for the power is given to the same man in different capacities. As executor he was not required to sell all the real estate if not needed for purposes (*a*), (*b*), and (*c*) ; hence the use of the word "any" in that connection was appropriate. But in his capacity as trustee he was bound to sell *all* the real estate that remained after as executor he had filed his account, for in no other way could he perform the duty imposed upon him to invest the residue "real personal or mixed in good safe and marketable securities". His duty as trustee to sell arose from this clause and was in no sense dependent upon the authority to sell. His duty to sell would have been just as great if no special power to sell at private sale had at all been given. That clause simply enlarged the *method* of selling and cannot be reasonably interpreted to relieve him of his *duty* to do so.

Nor do I agree with the learned auditing judge that the words *"for any other purpose"* had no meaning different from the other purposes specified, for such words were appropriate to authorize the sale for the purpose of investment in the securities specified.

Although, as I construe the will, there was a duty to sell, yet it does not necessarily follow that there must be a surcharge, because the learned auditing judge found as a fact that the real estate was not salable during the period in which the trustee had title, and I am not prepared to say this finding is manifest error. See Hollins' Estate, 29 D. & C. 307, 316, and Nola's Estate, 31 D. & C. 112.